[See Case No. 16,202.]

---

## Case No. 16,202.
### UNITED STATES v. ROYALL.
[3 Cranch, C. C. 620.] [1]

Circuit Court, District of Columbia. May Term, 1829.

COMMON SCOLD — EVIDENCE — BAIL FOR APPEARANCE—NUISANCE.

1. Upon the trial on an indictment for being a common scold, particular instances of scolding may be given in evidence.

2. After conviction as a common scold, the court will order the defendant, if in court, to give security for her appearance in court, from day to day, to hear the judgment of the court, and in the mean time to be of good behavior.

3. The law against a common scold, as being a common nuisance, is not obsolete, although the punishment by ducking may be. It is still punishable, as a nuisance at common law, by fine and imprisonment.

4. Anger is not a necessary ingredient in scolding.

The first and third counts of this indictment [against Ann Royall] having been adjudged bad upon demurrer [Case No. 16,201], the cause now came on for trial upon the general issue on the second count.

Mr. Swann, for the United States, called a witness to testify to a particular instance of the defendant's scolding.

Mr. Coxe, for defendant, objected that particular instances could not be given in evidence, the offence consisting in her being a common nuisance.

THE COURT, however, (nem. con.) overruled the objection.

The jury found the defendant guilty, and her counsel moved in arrest of judgment, and for a new trial; whereupon, at the motion of the attorney for the United States, the defendant was required to enter into recognizance with one or more good sureties, to appear in court from day to day, to hear

---
[1] [Reported by Hon. William Cranch, Chief Judge.]

the judgment of the court, and in the mean time to be of good behavior.

The cause was argued, on the motion in arrest and for a new trial, by Mr. Swann, for the United States, and Mr. Coxe, for the defendant.

Mr. Coxe contended that, by the common law, the only punishment of a common scold was ducking—a mode of punishment which is obsolete in England, and was never inflicted in Maryland, under whose common law this prosecution has been commenced. That it certainly is an unusual punishment, and is therefore forbidden by the bill of rights of Maryland. That as the punishment is taken away, the common law which inflicted it is also abrogated. To show that ducking was the only punishment of the offence, he cited Jac. Law Dict. tit. "Scold"; Rees' Cyclopædia and Webst. Dict. same title; 1 Hawk. P. C. 198, 200; 3 Inst. 219; Jac. Dict. tit. "Castigatory." Upon the motion for a new trial, he contended that anger and turbulence were necessary to constitute unlawful scolding, and that there was no evidence of either. The jury also had taken out with them the indictment containing the two bad counts which had been quashed by the court.

CRANCH, Chief Judge, delivered the opinion of the court (nem. con.) as follows: The defendant has been convicted upon the second count of this indictment, which is in the following words: "And the jurors aforesaid, upon their oath aforesaid, do further present that the said Ann Royall, being an evil disposed person as aforesaid, and a common scold and disturber of the peace of her honest and quiet neighbors, on the first day of June, in the year of our Lord one thousand eight hundred and twenty-nine, as aforesaid, at the county of Washington aforesaid, and on divers other days and times, as well before as after, was and yet is a common scold, and disturber of the peace and happiness of her quiet and honest neighbors residing in the county aforesaid; and that the said Ann Royall, on the first day of June, in the year aforesaid, and on divers other days and times, as well before as afterwards, in the open and public streets in the city of Washington, in the county aforesaid, did annoy and disturb the good people of the United States residing in the county aforesaid, by her open, public, and common scolding, to the common nuisance of the good citizens of the United States residing within the county aforesaid, to the evil example of all others in like cases offending, and against the peace and government of the United States."

The counsel for the defendant has moved the court to arrest the judgment, and to grant a new trial. In support of the motion to arrest the judgment, it is contended that the law for the punishment of common scolds is quite obsolete in England, and never was in force in this country; that it is a barbarous and unusual punishment, and therefore is prohibited by the bill of rights annexed to the constitution of Maryland, under whose supposed common law this indictment is framed; that the punishment of ducking was the appropriate and only punishment by the common law of England; and that, as that mode of punishment is obsolete there, and never was in use here, the law, which considered scolding as an indictable offence, is obsolete also. That the term "scold" is of uncertain signification; that the offence is not well defined in any adjudged case, or in any elementary writer. Jacob, in his Law Dictionary, says: "Scolds, in a legal sense, are troublesome and angry women, who, by their brawling and wrangling amongst their neighbors, break the public peace, increase discord, and become a public nuisance to the neighborhood. They are indictable in the sheriff's tourn, and punished by the cucking-stool." In order to show that such was the only punishment which could be inflicted upon a scold, the counsel for the defendant cited Jacob's Dict. (Tomlin's Ed.) tit. "Castigatory for Scolds," where it is said: "A woman indicted for being a common scold, if convicted, shall be sentenced to be placed in a certain engine of correction called the 'trebucket,' 'tumbrel,' 'tymborella,' 'castigatory' or 'cucking-stool,' which, in Saxon, signifies the 'scolding-stool,' though now it is frequently corrupted into 'ducking-stool,' because the residue of the judgment is, that when she is so placed therein, she shall be plunged into the water for her punishment." And in the case of Reg. v. Foxby, 6 Mod. 11, the reporter says: "Note, the punishment of a scold is ducking"; and Holt, when the exception was first made, said: "It were better ducking in a Trinity than in a Michaelmas term." And in the same case, in 6 Mod. 178, it is said: "She was convicted by the justices of the peace, at their quarter sessions at Maidstone, upon an indictment for being a common scold, and judgment that she should be ducked; whereupon she brought a writ of error, and hereupon the sheriff let her go at large, there being no fine or imprisonment in the judgment." And again, in the same case, 6 Mod. 213, upon affidavits that she was so ill that, without danger of her life, she could not come up to assign errors, in person, according to the course of the court, "they enlarged the time till next term, to see how she would behave herself in the mean time; for Holt, Chief Justice, said ducking would rather harden than cure her; and if she were once ducked she would scold all the days of her life;" a consequence which the court would hardly have inflicted upon the public, if they could have avoided it by substituting fine and imprisonment for ducking. From these authorities the counsel for the defendant concluded that ducking was the only punishment which could ever have been inflicted upon a scold, by the common law.

And to show that that punishment was obsolete in England, he cited the following passage from Jacob's Law Dictionary, tit. "Castigatory": "Though this punishment is now disused, a former editor of Jacob's Dictionary (Mr. Morgan) mentions that he remembers to have seen the remains of one" (a ducking stool) "on the estate of a relation of his, in Warwickshire, consisting of a long beam or rafter, moving on a fulcrum, and extending to the centre of a large pond, on which end the stool used to be placed."

The only punishment which could be inflicted being obsolete, the counsel for the defendant contended that the offence was no longer indictable, and therefore the judgment ought to be arrested. But it will be perceived that this argument rests upon the proposition that ducking was the only punishment which could be inflicted for the offence of being a common scold; and that that proposition is supported only by uncertain inferences drawn from a few loose expressions in the books, and chiefly from the word "shall," and the word "residue," in the first passage above cited, from Tomlin's Jacob's Dictionary, tit. "Castigatory." That passage, and particularly those words "shall" and "residue," are copied from 4 Bl. Comm. 168, where Blackstone says: "Lastly, a common scold—'communis rixatrix'—(for our law Latin confines it to the feminine gender,) is a public nuisance to her neighborhood, for which offence she may be indicted (6 Mod. 213); and, if convicted, shall (1 Hawk. 198, 200) be sentenced to be placed in a certain engine of correction called the 'trebucket,' 'castigatory,' or 'cucking-stool,' which, in the Saxon language, is said to signify the 'scolding-stool'; because the residue of the judgment is that, when she is so placed therein, she shall be plunged in the water for her punishment. 3 Inst. 219." The authorities, thus cited by Blackstone, do not indicate any opinion that ducking is the only punishment, nor even that it is an indispensable part of the punishment. The argument drawn from the playful expression of Lord Chief Justice Holt, in 6 Mod. 213, does not warrant so grave a conclusion. They were intended, perhaps, only to excite suprise by their exaggeration; for surprise is sometimes an approximation to wit. Nor can such a conclusion be drawn from the language of Hawkins in the passages cited by Blackstone. 1 Hawk. P. C. 198, 200. The first of those passages is this: "Although it hath been said that an indictment of a common scold by the words 'communis rixatrix,' which seem to be precisely necessary in every indictment of this kind, is good, though it conclude 'ad commune nocumentum diversorum,' instead of 'omnium,' &c., perhaps for this reason; because a common scold cannot but be a common nuisance." The other passage is (1 Hawk. P. C. 200)—"As to the third point, namely, in what manner common nuisances may be punished, it is

said that a common scold is punishable by being put in the ducking-stool; and there is no doubt but that, whoever is convicted of another nuisance may be fined and imprisoned." And the passage cited from 3 Inst. 219, seems rather to justify a contrary conclusion. Lord Coke is speaking of the different means of punishment; and, after describing the pillory and tumbrel, he says—" 'Trebucket,' or 'castigatory,' named in the statute of 51 Hen. III., signifieth a 'cucking-stool'; and 'trebucket' is properly a 'pitfall,' or 'downfall,' and, in law, signifieth a stool that falleth down into a pit of water, for the punishment of the party in it; and 'chuck,' or 'guck,' in the Saxon tongue signifieth to scold or brawl, (taken from 'cuckhaw' or 'guckhaw,' a bird, 'qui odiose jurgat et rixatur,') and 'ing,' in that language, (water); because she was, for her punishment soused in the water; and others fetch it from 'cuck-quean i pellex.' " This citation does not justify an inference that the ducking-stool was an instrument appropriated to the punishment of scolds only. It says, for the punishment of the party; and it refers to the statute of 51 Hen. III. stat. 6, entitled "Judicium Pillorie; A Statute of the Pillory and Tumbrel, and of the Assize of Bread and Ale," "A. D. 1266," by which it is enacted, that "if a baker or a brewer (braciatrix) be convict, because he hath not observed the assize of bread and ale," "patiatur judicium corporis silicet, pistor collistrigium, et braciatrix trebuchetum vel castigationem" (the old translation in the statute-book is—"then he shall suffer punishment of the body; that is, to wit, a baker to the pillory, and a brewer to the tumbrel, or some other correction.")

It is, therefore, clear, that the punishment of the tumbrel or trebucket, which were the same instrument, was not confined to scolds; and that this citation from Lord Coke does not justify an inference that ducking was the only punishment which could be inflicted upon them. If it should be said that such an inference may be drawn from the etymology of the word "cucking-stool," which he derives from a Saxon word signifying to scold, that inference is rebutted by the more probable etymology given by Burn (3 Burn's Justice, p. 225), who says—"The common people in the northern parts of England, amongst whom the greatest remains of the ancient Saxon are to be found, pronounce it 'ducking-stool,' which, perhaps, may have sprung from the Belgic or Teutonic 'ducken,' to dive under water; from whence, also, probably we denominate our duck, the 'water-fowl'· or, rather, it is more agreeable to the analogy and progression of languages to assert, that the substantive, 'duck,' is the original, and the verb made from thence; as much as to say, to 'duck' is to do as that fowl does." So that the name of the instrument may have been given to it because it is a plunging instrument, and not because it was used for the punishment of scolds

only. The words "tumbrel," "trebucket," "castigatory," "cucking-stool," and "ducking-stool," are used synonymously by the old writers, as well as in the old statutes; so that the observations of Lord Coke in the following passage, from the page cited by Blackstone (3 Inst. 219), is as applicable to the trebucket as to the tumbrel—"Now, for that the judgment to the pillory or tumbrel (as hath appeared before,) doth make the delinquent infamous, and that the rule of law is 'Judicium de majore pœna quam quod legibus stat⁊tum est non infamum facit, sed per breve de errore adnullari potest'; and again, 'Pæna gravior ultra legem posita æstimationem conservat'; that the justices of assize, oyer and terminer, jail delivery, and justices of the peace would be well advised, before they give ·judgment of any person to the pillory or tumbrel, unless they have good warrant for their judgment therein. Fine and imprisonment, for offences finable by the justices aforesaid, is a fair and sure way." It is said, however, that this last observation of Lord Coke is confined to offences finable by the justices; and that to argue, from that passage, that a common scold was finable, is to beg the question; as the sentence admits, by implication, that some offences, punishable by the pillory or tumbrel, might not be finable by the justices. In the next sentence, in the same page, however, Lord Coke enumerates many statutes which authorize punishment by the pillory and tumbrel; in some of which the courts are authorized to inflict that punishment in addition to fine and imprisonment, and in others to inflict that punishment· alone; which will account for Lord Coke's advice being confined to offences finable by the justices, without admitting that there were .any common-law misdemeanors which could not be punished by fine and imprisonment. Mr Chitty (1 Cr. Law, 710) lays down this general rule, that "every description of misdemeanor, or crime, for which an indictment will lie at common law, not subjecting the offender to a capital penalty, is within the discretion of the judges." Thus in the case of Rex v. Thomas, Cas. t. Hardw. 279, convicted of keeping a disorderly house, the wife was in prison, but the husband had run away from his bail; affidavits were made that the prisoner was in so weak a condition that a bodily punishment might kill her: "Per Curiam. The ordinary judgment in this case is pillory; but, for misdemeanor, the court is not tied down to any particular punishment; and being a married woman has nothing to pay a fine withal, the punishment must be imprisonment." The judgment was, that she be imprisoned a year, and then to find security for her good behavior for seven years.

It may be observed, also, in the Case of Foxby, before cited from 6 Mod. 178, that she was a married woman, as appears in page 213 of the same book; which may ac-

count for the judgment not being fine and imprisonment, as well as ducking. In Bac. Abr. tit. "Nuisance," D, it is said—"All common nuisances to the public are regularly punishable by fine and imprisonment, at the discretion of the judges; but in some cases corporal punishment may be inflicted, as in the case of a common scold, who is said to be properly punishable by being put into a ducking-stool Also the offence of keeping a disorderly house is punishable, not only with fine and imprisonment, but also with such infamous punishment as to the court, in its discretion, may seem proper."

We think that, by these authorities, it is clear that Sir William Blackstone, in using the word "shall" in the passage cited, is not to be understood as having used it in its peremptory and obligatory sense, and .as intimating that the court was bound to inflict the punishment of ducking upon a common scold, under all possible circumstances; and that, in using the word "residue," it is not to be presumed that he intended to be understood as denying the power of the court to punish any common-law misdemeanor by fine and imprisonment. It is true, that the court, in its discretion, might sentence the offender to be ducked only; in which case, it would be part of the judgment that she should be placed in the stool; and the "residue," in that case, would be, that she should be plunged in the water. And in this sense only can Blackstone be understood, consistently with the general principles of law and the authorities cited. If a part of the common-law punishment of the offence has become obsolete, the only effect is, that the discretion of the court is so far limited: The offence is not obsolete, and cannot become obsolete so long as a common scold is a common nuisance. All the elementary writers upon criminal law admit, that being a common scold, to the common nuisance of the neighborhood, is an indictable offence at common law The court is therefore of opinion, that although punishment by ducking may have become obsolete, yet that the offence still remains a common nuisance, and, as such, is punishable by fine and imprisonment, like any other misdemeanor at common law; and that, therefore, the motion in arrest of judgment must be overruled.

The motion for a new trial rests upon two grounds: (1) That a woman cannot be guilty of scolding unless the words were spoken in anger, and with turbulence; and that the court permitted evidence to be given of insulting and provoking language, uttered by the defendant in an insulting and provoking manner, but not in an angry and turbulent manner; and that there were only two or three instances proved of the language being used by the defendant in anger. (2) That the jury was permitted to take out the indictment which contained the two counts which the court had adjudged to be insufficient, without any information to the jury

that those two counts were not to be considered by them.

1. As to the first ground of new trial, the court, at the trial, overruled the objection to the evidence, being of opinion that the insulting and provoking language might be given in evidence, although not spoken in an angry or turbulent manner; which opinion, they still think, is correct, and that its admission is not a sufficient reason for granting a new trial.

2. The second reason is, that the jury took out with them the indictment containing the two counts which the court had, upon demurrer, adjudged to be insufficient. Those counts were not matter of evidence; nor could they have been so understood by the jury; and they could not be separated from the good count, upon which the issue was joined. The indictment was, as usual, delivered to the jury when they retired, without objection by the defendant, or her counsel; and all the facts averred in those counts were matters which, if proved, were evidence upon the issue which the jury was sworn to try. If issue had been joined upon all the three counts, and a general verdict of guilty had been rendered, the judgment could not have been arrested on account of the two bad counts; and yet the jury might have given their verdict, in fact, upon evidence applicable only to one of the bad counts. It is true that it might be the ground of a motion for a new trial; but, upon that motion, the court, before they would grant a new trial, must be satisfied that the evidence was not sufficient to support the good count. So here, although the jury might have supposed they were trying an issue upon all the counts, and may have given their verdict, because they thought one of the bad counts was supported, if the court is satisfied that the evidence was sufficient to support the good count, the court ought not, in its discretion, to grant a new trial. The court is perfectly satisfied that the evidence in that respect was sufficient, and must, therefore, overrule the motion.

The defendant was sentenced to pay a fine of $10, and to give security for her good behavior for one year, and to stand committed until the fine and costs should be paid, and the security given.